NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKOLAI KUROPATKIN,<br><br>Plaintiff,<br><br>vs.<br><br>TRT INTERNATIONAL, LTD. and<br>FEDERAL EXPRESS CORPORATION,<br><br>Defendants. | Civil Action No.: 09-5512 (PGS)<br><br>MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

This is a breach of contract and negligence action arising from the international shipment of two automobiles from New Jersey to Russia. Plaintiff Nikolai Kuropatkin ("Plaintiff") alleges that TRT International, Ltd. ("TRT") and Federal Express Corporation ("Fed Ex") (collectively, "Defendants") are responsible for the destruction of his certificates of title and the eventual seizure of his automobiles by Russian customs officials. Currently before the Court is Fex Ex's objection to the magistrate judge's May 21, 2010 Report and Recommendation. For the following reasons, the Court declines to adopt the magistrate judge's Report and Recommendation and denies Plaintiff's motion to remand.

**I.   BACKGROUND**

On or about December 2, 2008, Plaintiff entered into a written agreement with TRT to ship, among other things, two automobiles and a "large quantity of personal effects" from Port Elizabeth,

New Jersey to his hometown in the Kasnodar region of the Russian Federation. (Amend. Compl. ¶¶ 8-9.) In accordance with this agreement, TRT advised Plaintiff that, in order for his automobiles to pass through U.S. and Russian customs, he was required to provide TRT with the original certificates of title. (*Id.* ¶¶ 11, 13.) TRT would then ship the titles to Plaintiff via DHL when he arrived in Russia so that he could retrieve his automobiles from customs officials at a facility run by "RusCon," a customs-affiliated storage company. (*Id.* ¶¶ 15, 27.)

On December 10, 2008, TRT contracted with Fed Ex (not DHL, as Plaintiff agreed) to ship Plaintiff's titles. (*Id.* ¶ 18.) The stated value of the package was $1.00. (*Id.* ¶ 19.) By mid-December 2008, Plaintiff arrived in Russia and was awaiting delivery of his titles. However, the titles never arrived. As a result, Plaintiff contacted TRT, but was told "to stay patient and wait." (*Id.* ¶ 23.)

By mid-January 2009, TRT provided Plaintiff with a Fed Ex tracking number. (*Id.* ¶ 24.) However, much to his surprise, from this tracking information Plaintiff learned that his titles had been destroyed by Fed Ex on December 22, 2009. (*Id.* ¶¶ 25-26.) According to a Fed Ex representative, the titles were destroyed because TRT "refused" to pay an additional $42.00 that was due for delivery to Plaintiff's address. (*Id.* ¶ 26.) Fed Ex records indicate that TRT was required to pay the money by December 19, 2008. (*Id.* ¶ 26; *see also* Cates Aff. Ex. 2.)[1]

When Plaintiff "confronted" TRT with the information obtained from Fed Ex, TRT allegedly assured him that his automobiles could be released with only a copy of his titles. (*Id.* ¶ 28.) RusCon, however, refused to release the automobiles without original titles. (*Id.* ¶ 29.)

---

[1] According to Plaintiff, on January 15, 2009, "Fed Ex issued a check for $100 to TRT as a payment in full and final settlement for TRT's claim for [Plaintiff's] destroyed package." (*Id.* ¶ 34.) However, "[t]o this day, TRT has not released any of this money to [Plaintiff]."

Consequently, Plaintiff's automobiles remained in storage with RusCon and accrued tariffs and fees totaling more than $12,000.00. (*Id.* ¶ 30.)[2] Eventually, when Plaintiff did not pay the "exorbitant and increasing fees," his automobiles were confiscated by the Russian government. (*Id.* ¶¶ 31, 33.)

On September 28, 2009, Plaintiff filed suit against Defendants in the Superior Court of New Jersey, Law Division. As amended, Plaintiff's complaint alleges five causes of action: (1) breach of contract against TRT; (2) negligence against Fed Ex; (3) negligence against TRT; (4) negligent infliction of emotion distress against TRT; and (5) conversion against TRT. On October 29, 2009, Fed Ex removed Plaintiff's action to federal court pursuant to 28 U.S.C. § 1441(b), asserting that the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on October 12, 1929, as amended at The Hague, 1955 (the "Warsaw Convention") governed Plaintiff's action.[3] On November 9, 2009, Plaintiff moved to remand. On May 21, 2010, the magistrate judge filed a Report and Recommendation, which recommended granting Plaintiff's motion to remand. Thereafter, Fed Ex objected to the magistrate judge's Report and Recommendation.

## II.   STANDARD OF REVIEW

Objections to a magistrate judge's Report and Recommendation are governed by 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.1(c)(2). Pursuant to these provisions, within fourteen days, any

---

[2] Plaintiff alleges that the fees charged by Russian customs officials dramatically increased after December 31, 2008. (*Id.* ¶ 22.) Accordingly, it was imperative that Plaintiff obtain his automobiles before that date.

[3] In removing this case, Fed Ex did not seek the consent of co-defendant TRT. However, because TRT has not been served with process, Fed Ex asserts that TRT's consent to removal is not required. *See generally Menkevich v. Delta Tools*, Civil No. 08-5033 (JBS/JS), 2009 WL 1228434, at *1 (D.N.J. April 27, 2009).

party may object to the proposed findings of fact and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). A district judge shall then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *Vaughn v. Flowserve Corp.*, Civ. No. 05-2725(GEB), 2006 WL 2191325, at *1 (D.N.J. Aug. 1, 2006). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### III.  DISCUSSION

Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . . The State court may thereupon proceed with such case." Plaintiff argues that remand is appropriate in this case because the Warsaw Convention is inapplicable to either the shipment of his automobiles or certificates of titles, thereby depriving the Court of federal question jurisdiction. Fed Ex takes no position with regard to Plaintiff's automobiles, but argues the treaty applies to the shipment of Plaintiff's titles.

The Warsaw Convention is an international treaty intended "to achieve uniformity of rules governing claims arising from international air transportation." *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002) (Sotomayor, J.) (internal quotations omitted). "To this end, the Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.'" *Id.* at 356-57 (quoting Warsaw Convention, Art. 1); *see also Levy v.*

*United Parcel Sys.*, Civil No. 06-5738 (FSH), 2008 U.S. Dist. LEXIS 11543, at *3-4 (D.N.J. Feb. 14, 2008) (interpreting Montreal Protocol).

The Warsaw Convention applies when the following elements are satisfied: (1) the goods were shipped via international transportation by aircraft; (2) the country of origin and destination were signatories to the Warsaw Convention at the time the goods were shipped; and (3) the damage to the goods in question occurred during carriage by air. *Levy*, 2008 U.S. Dist. LEXIS 11543, at *5-6.

All of the elements necessary to apply the Warsaw Convention are present in this case. First, as Fed Ex concedes, Plaintiff's titles were shipped internationally by aircraft. (Cates Aff. Exs. 1, 2.) Second, as the magistrate judge held and neither party disputes, both the United States and Russia were signatories to the Warsaw Convention at the time Plaintiff's titles were shipped. (Report & Recommendation at 5.) Third, Plaintiff's titles were destroyed during carriage by air. Under the Warsaw Convention, "carriage by air" is defined as "the period during which the luggage or goods are in charge of the carrier, whether in an aerodrome or on board an aircraft, or, in the case of a landing outside an aerodrome, in any place whatsoever." Warsaw Convention Art. 18(2); *see also O'Gray Import & Export v. British Airways PLC*, Civil Action No. RDB-06-1020, 2007 WL 1378391, at *3 (D. Md. May 4, 2007) (interpreting Montreal Protocol); *accord Jaycee Patou, Inc. v. Pier Air Int'l, Ltd.*, 714 F. Supp. 81, 84 (S.D.N.Y. 1989) ("So long as the goods remain in the air carrier's actual or constructive possession pursuant to the terms of the carriage contract, the period of 'transportation by air' does not end. If the airlines had put the plaintiff's shipments on (say) a truck and transported them from the airport in Buenos Aires to another location where the buyer took possession, neither plaintiff nor the airlines would have any basis for claiming that 'transportation

by air' had ceased.") (internal quotations omitted). It is undisputed that Plaintiff's titles were "in charge of the carrier" because they were destroyed at Fed Ex's facility in Russia. Accordingly, the Warsaw Convention applies and the Court has federal question jurisdiction over this matter.

Plaintiff argues that the Warsaw Convention is inapplicable based upon his reading of Article 18(3). That article states:

> The period of the carriage by air does not extend to any carriage by land, by sea or by river performed outside an aerodrome. If, however, such a carriage takes place in the performance of a contract for carriage by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the carriage by air.

Plaintiff asserts that there is merely a presumption that his titles were destroyed during carriage by air, and that this presumption was rebutted through evidence that Fed Ex actually destroyed Plaintiff's titles on the ground at its facility.

Plaintiff's reliance on Article 18(3), however, is misplaced. As suggested by its title, Article 18(3) deals with the liability of transportation carriers subject to the Warsaw Convention, not whether the Warsaw Convention applies. *See Magnus Electronics, Inc. v. Royal Bank of Canada*, 611 F. Supp. 436, 439-40 (D.C. Ill. 1985) ("Article 18(3) leaves open to the carrier the possibility of escaping absolute liability under Article 18(1) by proof that someone else was responsible. But that does not limit the defined scope of 'transportation by air.'"). Moreover, even if Article 18(3) is applicable, Plaintiff's reading contradicts the definition of "carriage by air" set forth in Article 18(2), which includes "the period during which the luggage or goods are in charge of the carrier," regardless of their physical whereabouts. Given the language of Article 18(2), courts apply the Warsaw Convention even where the exact location of the damage is unknown, so long as the cargo

remained "in charge of the carrier." *See, e.g., O'Gray Import & Export*, 2007 WL 1378391, at \*3. Accordingly, Plaintiff's motion to remand is denied.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court declines to adopt the magistrate judge's May 21, 2010 Report and Recommendation. (Docket Entry 29.) Furthermore, it is on this 17th day of June 2010 **ORDERED** that Plaintiff's motion to remand is denied. (Docket Entry 7.)

_____
HON. PETER G. SHERIDAN, U.S.D.J.

Dated: June 17, 2010